HAROLD DELANO v. STATE.

No. A-10563. April 24, 1946.

(168 P. 2d 659.)

Rex H. Holden, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and George Miskovsky, Co. Atty., of Oklahoma City, for defendant in error.

JONES, P.  This appeal seeks an interpretation of our slot machine and punchboard statutes, 21 O. S.1941 §§ 964-977, as applied to the machine owned by defendant.

Since their enactment by the Legislature in 1939 these statutes have been before this court twice for construction.  Ex parte Davis, 66 Okla. Cr. 271, 91 P.2d 799; Couch v. State, 71 Okla. Cr. 223, 110 P.2d 613.

The defendant at the time of his arrest was the owner of a penny arcade in Oklahoma City.  There were many and various amusement devices in his place of business including the Hitler Ray Machine involved in this action.

This machine is in two parts; one part consists of a fairly large wooden cabinet with a plate glass window about two feet square in front.  Inside of the cabinet is a caricature of Adolph Hitler, which is the object to be shot.  Separate and apart from the cabinet containing Hitler's caricature is a gun which shoots an electric ray.  When a person inserted a nickel into the mechanism the ray gun was loaded for 20 shots.  When the coin is inserted the mechanism is set into operation whereby Hitler's image starts moving back and forth across the cabinet.  The shots are fired while the figure is thus

moving. The defendant was arrested and charged with operation of a slot machine by reason of his ownership and operation of this Hitler ray gun, and has appealed to this court.

At the trial before the court, a jury having been waived, only two witnesses were called, to wit, the defendant and one of his employees. There is no dispute about the facts. After describing the Hitler ray gun as hereinabove set forth, the defendant testified:

"Q. By having a perfect strike, that is, by being a perfect shot, so to speak, and hitting him 20 times, would the player receive anything by having done so? A. No. Q. Would he receive any additional shots or anything else? A. No. Q. If the player misses all 20 shots, will he receive anything? A. No. Q. Will he be penalized or lose anything? A. No. Q. Is it possible to win or lose anything by the operation of this machine? A. No."

The defendant further testified that he allowed no gambling in his place of business and that there were signs on many of the machines expressly forbidding gambling. That he had a floor walker employed for the express purpose of seeing that no gambling was done in his place of business.

R. M. Maney, employee of the defendant, testified to substantially the same facts as defendant. He further swore that the only difference between this machine and the average shooting gallery was that the Hitler ray gun shot an electric beam instead of lead bullets. The proof further showed that there was no danger involved in the machine and that the hitting of Hitler with the electric beam involved solely a demonstration of skill and there was no element of chance involved.

It is further agreed by the state that the machine was played for amusement only and that nothing is gained or lost by operation of the machine unless this machine comes within ruling of this court in Couch v. State, supra, wherein we held in accordance with the statute above quoted that the amusement obtained by the operator of a slot machine was a thing of value.

The statute under consideration provides:

"For the purpose of this Act, 'slot machine' is defined to be:

"First, Any machine, instrument, mechanism or device that operates or may be operated or played mechanically, electrically, automatically or manually, and which can be played or operated by any person by inserting in any manner into said machine, instrument, mechanism or device, a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value; and

"Second: Any machine, instrument, mechanism or device that operates or may be played or operated mechanically, electrically, automatically, or manually, and which can be played or operated by any person by paying to or depositing with any person, or by depositing with or in any cache, receptacle, slot, or place a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value." 21 O.S.1941, § 964.

It is further provided:

"Every slot machine and every punch board as defined in this Act, is hereby declared to be per se a gambling device, and each is hereby declared to be a public nuisance, and the same may be abated in manner as provided for

the abatement of a public nuisance under chapter 58, Oklahoma Statutes 1931." 21 O.S.1941 § 972.

And:

"Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted, in or about any place of business, or in or about any place, whether as owner, employee or agent, any slot machine for the purpose of having or allowing same to be played by others for money, property, tangible or intangible, coin, currency, check, chip, token, credit, amusement or any representative of value or a thing of value, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than Fifty ($50.00) Dollars nor more than One Hundred Fifty ($150.00) Dollars, or by imprisonment in the county jail for a term of not more than sixty (60) days, or by both such fine and imprisonment." 21 O.S.1941 § 970.

In Couch v. State, supra, it is stated [71 Okla. Cr. 223, 110 P. 616]:

"The Legislature under the police power has the right to determine what is dangerous and injurious to the public health, the public morals, and the public safety of its inhabitants. McCord v. State, 2 Okla. Cr. 214, 101 P. 280.

"However, police power should not be invoked where the subject to which it is directed has no substantial relation to public health, morals, or welfare, or for a matter for which by law no person ought to be punished. Ex parte Davis, supra."

Under the theory of the state, the machine in question is on the borderline of uncertainty while under the theory of the defendant its operation is absolutely legal.

In passing upon the question here involved, it should be borne in mind that criminal statutes are not to be extended or enlarged by implication. In State v. Waite, 156 Kan. 143, 131 P.2d 708, 709, 148 A.L.R. 874, it is stated:

"A rule of strict construction is to be applied to criminal statutes and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute."

In Little v. State, 55 Okla. Cr. 420, 32 P. 2d 94, 95, this court stated:

"Penal statutes cannot be enlarged by implication or extended by inference.

"Person cannot be convicted of crime unless act is within both letter and spirit of penal statute."

See, also, Myers v. State, 19 Okla. Cr. 129, 197 P. 884, 18 A.L.R. 1057; McDonald v. State, 54 Okla. Cr. 122, 15 P.2d 149.

The lower court found the defendant guilty based solely upon the opinion of this court in Couch v. State, supra, and Ex parte Davis, supra. In Couch v. State, supra, the language used by this court was directed at the particular machine involved in that action just as the opinion in this case is directed to the particular machine herein involved. In the Couch Case we were considering a marble board that had an electrical attachment which was a part of the machine that permitted the giving of free balls or shots when a certain pin was struck, and although the particular mechanism giving the extra shots was not at the time the machine was seized by the officers connected so as to operate, yet the machine was manufactured and constructed so as to permit the winning of extra shots. In addition, we held that the machine came within the prohibition of the statute because of its very nature, and that it was one of the particular machines which the Legislature had in mind as being harmful to public morals at the time of the passage of the act. The Legislature had a right to conclude

that such a slot machine attracts youth, gets their money, and educates them in the gambling spirit.

However, in the Couch Case this court held that the Legislature had specifically stated that "amusement" was a "thing of value." 21 O.S.1941 § 965. In considering whether the machine here involved comes within the prohibition of the statute, it is necessary that we carefully analyze the statute. Under that part of the act defining a slot machine we find that it is: First, any machine, instrument, mechanism or device that operates or may be operated or played mechanically, electrically, automatically or manually; second, which can be played or operated by any person by inserting in any manner into said machine, instrument, mechanism or device a coin, chip, token, check, credit, money, representative of value, or thing of value; third, by which play or operation such person will stand to win or lose; fourth, whether by skill or chance, or both; fifth, a thing of value.

It is conceded by counsel for defendant that the machine involved fulfills all of the above mentioned elements except No. 3, that is to say, the operator did not stand to win or lose a thing of value.

According to the evidence there was never any extra value or extra shots, merchandise, or any other thing given a good score. If a person was unlucky enough to hit Hitler's image only once, he did not lose anything, and if he was skilful enough to hit Hitler's image each of the 20 shots, he did not win anything.

It has not been pointed out by the state whereby the machine in question is injurious to public morals so that this court might say that the Legislature had in mind prohibiting the operation of said machine in the passage

of the statutes in question. The machine is not dangerous, and for this court to hold that its operation was prohibited by statute would render liable to prosecution an individual operating music box machines, cigarette or candy coin vending machines, automatic parking meters, coin meters on transportation busses, pay toilets, or weighing machines. These are all mechanical devices whereby a person inserts a coin and receives something commensurate in value to the coin deposited. As shown by section 972 of the statute, supra, the Legislature declared the slot machines as defined by section one of the act to be gambling devices. It was at the evil of gambling to which the statute was directed. The machine involved can in no way be said to be a gambling device. It is true that persons may gamble on their skill and the score they might make in shooting at Hitler's image, but the same argument would apply to shooting in any ordinary shooting gallery where a person deposits the consideration with the owners of the gallery and is permitted so many shots with lead bullets for the consideration paid to the operator.

In recent years there has been a continuous increase of coin operated automatic devices in establishments patronized by the public, particularly in those places of business furnishing meals or amusement. Many of the machines were manufactured so as to come within the law, but the law against gambling was being circumvented by the giving of tokens good for free games for certain scores made on the machine. These tokens were often redeemed by cash or merchandise. To hit at this evil the Legislature defined "amusement" as a "thing of value." After the passage of the law, any machine giving a free game for high scores would come within the prohibition of the statute.

The state virtually concedes that the machine is not a gambling device. Bouvier's Law Dictionary, Rawle's Third Revision, p. 1331 defines gaming "as a staking on chance where chance is the controlling factor.." As already shown, the hits registered upon Hitler's image were dependent upon skill.

In Couch v. State this court did not interpret the section of the statute wherein it provides that a player must *win* or *lose* something of value. We were concerned chiefly with the question as to whether amusement was a thing of value, the defendant contending under the doctrine of ejusdem generis that it was not. It appears to us that the phrase *"win* or *lose"* inserted in the statute was therein placed so as to require the player to win or lose something by his play. It was not necessary that he win or lose, but if the machine is one whereby he might win or lose something of value by his play, then the operation of the machine is prohibited by the statute.

So far as the language in Couch v. State, supra, is contrary to the views herein expressed, the same is modified to conform with this opinion.

Holding as we do that the state has failed to sustain the burden of showing that the defendant through the operation of the Hitler ray gun has violated the Slot Machine Act, it follows that the judgment of the court of common pleas of Oklahoma county should be reversed.

It is so ordered.

BAREFOOT, J., concurs. DOYLE, J., not participating.