## Ex parte BARNETT.

No. A-11859.   Jan. 7, 1953.

(252 P. 2d 496.)

Jimmie Whiteley, Tulsa, and M. S. Simms, Sand Springs, for petitioner.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., Charles E. Steele, County Atty., Okmulgee County, Okmulgee, and O. E. Richeson, Asst. County Atty., Okmulgee County, Henryetta, for respondent.

POWELL, J. On November 8, 1952, in case No. A-11,859, David S. Barnett filed with the clerk of this court his petition for writ of habeas corpus. Likewise, on November 17, 1952, Orbia Overturff and Thelma Overturff, in causes Nos. A-11,860 and A-11,861, respectively, filed similar petitions. 252 P. 2d 505, 508. Rule to show cause was on November 6, 1952, entered in the Barnett case, and it was set for hearing for November 19, 1952. Hon. Charles E. Steele and Hon. O. E. Richeson, county attorney and assistant county attorney, respectively, of Okmulgee county, filed on November 17, 1952, a response to the rule to show cause, as well as brief in support thereof. The Attorney General as chief law officer of the state, appeared and filed a brief on behalf of the warden of the penitentiary in which he states that in his judgment the petitions should be sustained, the sentences declared invalid, and that petitioners should be discharged from imprisonment.

All of the petitions first mentioned, resulting from convictions in the superior court of Okmulgee county, Henryetta Division, and involving the identical legal questions, were assigned for argument together.

In the within case, at time of hearing on November 19, the facts developed that David S. Barnett was convicted of the crime of public drunkenness, second and subsequent conviction, charged under Tit. 37 O. S. 1951 § 12, and had been on September 18, 1952, sentenced to serve two years in the State Penitentiary, but the sentence was at the time suspended. On October 27, 1952, an application to revoke the suspended sentence was made by the county attorney based upon the

arrest of the defendant Barnett under the charge of subsequent intoxication in a public place on October 26, 1952. Thereafter, on November 6, 1952, after a hearing before the superior court, an order was entered revoking the suspended sentence and ordering the defendant to be imprisoned in the State Penitentiary in accordance with the original judgment and sentence of September 18, 1952.

On completion of oral arguments before this court on November 19, 1952, the petitioner Barnett was ordered released from imprisonment to await the further order of this court, and the parties were directed to submit further briefs. Accordingly, petitioner filed a brief on November 28 to apply in all three of the cases mentioned, and the Attorney General under date of December 9, 1952, filed a brief on behalf of the State.

The charging part of the information in the within case reads:

" * * * that the said defendant, David Barnett, did unlawfully, wilfully, wrongfully and feloniously become drunk or intoxicated in a public place by then and there on said day and date, being in, to-wit: one-half mile south of the City Limits, on Dustin Road, in a drunk and intoxicated condition; that the defendant, David Barnett, is a subsequent or second offender in that heretofore, to-wit: on the 28th day of June, 1952, said defendant, David Barnett, did plead guilty to the crime of being intoxicated in a public place and was given a fine of $10.00 and 10 days in the county jail of Okmulgee County, Oklahoma, by Ralph N. Giles, Justice of the Peace, 8th District of Okmulgee County, Oklahoma, being Case Number 642, contrary to the form of the Statutes made and provided and against the peace and dignity of the State."

The decisive issue raised by petitioner, and the only one necessary to notice, is the contention that he was illegally prosecuted under Tit. 37 O. S. 1951 § 12, in that such section, originally adopted from Session Laws of 1910 and 1911, related only to making a second and subsequent offense of the sale or transportation of intoxicating liquors a felony, and did not include a conviction of drunkenness in the terms of that act, and that the words "provisions of this Act" did not include public drunkenness, and that the judgment and sentence complained of was and is void.

On the other hand, the prosecuting officials of Okmulgee county contend that:

"It is at once apparent and clear that the Legislature intended Sections 8 and 12, Title 37 O. S. 1951, to be an integral part of the Prohibition Laws of the State of Oklahoma, because of the inclusion and the proximity of their location in the statutes of the State of Oklahoma, both being listed and found under Title 37, denominated as 'Intoxicating Liquors,' and placed under Chapter I, the generalized part of the Act."

It is further stated:

"We feel that the question of whether or not the punishment under Section 12, Title 37 O. S. 1951, is of misdemeanor or felony grade is in the discretion of the Court in cases of a plea of guilty, or of the jury, as the case may be, after consideration of the number of previous convictions and the nature, facts and circumstances surrounding the commission of the crime."

And on oral argument and in brief filed with this court the county attorney presented his reasons in support of the prosecutions. We commend the county attorney for the initiative shown in support of his analysis of the law. The fact that the provisions involved have been in effect some 39 years and have never been invoked in connection with drunkenness, standing alone affords no reason for interpreting this statement as facetious, but is all the more cause for the commendation of the officials for seeking to have the question resolved, for there is always the problem of attending vexations should the action be determined erroneous.

What we have said, however, by no means is meant to approve in any way the statements in oral argument before this court, if facts should show such to be true, of a summary and oppressive campaign of coercion against unfortunate citizens plagued with the curse of the debilitating liquor habit, where their constitutional and statutory rights were alleged to have been wholly disregarded and their negative and irresponsible attitudes taken advantage of.

There is brought to focus, then, the question of whether or not our State Legislature, when it enacted, from time to time, sections 12, 15 and 8,[1] as now designated, Tit. 37 O. S. 1951, intended section 12, the second offense statute, to apply to section 8, the public drunkenness statute, and thereby making a person who had been once convicted of drinking or being drunk in a public place, etc. punishable, if convicted a second time for such an offense, by a possible five year term of imprisonment in the State Penitentiary.

Tit. 37 O. S. 1951, §§ 12 and 15, secs. 16 and 19, Chap. 70, p. 165 O. S. L. 1911, read:

"§ 12. For the second and all subsequent convictions for the violation of any of the provisions of this act, the penalty shall be a fine of not less than fifty ($50.00) dollars, nor more than two thousand ($2,000.00) dollars, and by imprisonment of not less than thirty (30) days in the county jail, nor more than five (5) years in the State Penitentiary, and it shall be mandatory upon the trial judge in cases where anyone has been convicted under any provision of this act, to pronounce sentence within ten days from the date of conviction. * * *

"§15. Wherever the words 'this act' appear in any of the laws of this state enacted for the suppression of the liquor traffic, commonly called prohibition laws, they shall be construed to mean and include all such prohibition laws of this state."

Tit. 37 O. S. 1951 § 8, § 16 Art. 3, Chap. 69, p. 608, O. S. L. 1907-08, reads:

"Any person who shall, in any public place, or in or upon any passenger coach, street car, or in or upon any other vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station, or room, drink any intoxicating liquor of any kind, or if any person shall be drunk or intoxicated in any public or private road, or in any passenger coach, street car, or any public place or building, or at any public gathering or if any person shall be drunk or intoxicated and shall disturb the peace of any person, he shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or by imprisonment for not less than five days nor more than thirty days, or by both such fine and imprisonment."

The state anchors and bottoms its argument, as indicated, on the inescapable and irritating fact of the location from time to time of the drunkenness statute, Tit. 37 O. S. 1951 § 8, and the second offense statute, Tit. 37 O. S. 1951 § 12, within the structure of the prohibition laws of this state, which has given rise to a seeming hiatus or incompleteness.

In considering the questions raised by the prosecution before us, and in attempting to determine the legislative intent, there are certain general and particular principles of law to be kept in mind as aids. And one is that:

---

[1] The necessary tools for a clear understanding of the problem is Vol. I of the 1951 Oklahoma Statutes, and a reading of Sections 12, 15 and 8 of Title 37, and the observation of the history of each section as shown by the annotations, including the Prohibition Ordinance appearing as Art. I, § 7 of the Const. of Okla., and an examination of Sec. 16, p. 608 of the 1907-08 S. L. the public drunkenness Act. Section 12, the second offense statute, first appears as Section 18, p. 165, S. L. 1910-11; and was later amended in 1913, Sec. 16, p. 46, S.L. 1913. Section 15, "Meaning of 'this act'" provisions, appears as Sec. 19, p. 166 ,S. L. 1910-11. The titles to each act should be read. They are too voluminous to quote

"Penal statutes cannot be enlarged by implication or extended by inference, and conviction of crime is unwarranted unless act is within both letter and spirit of penal statute." Tit. 21 O. S. 1951 § 2; Biggs v. Watt, 56 Okla. Cr. 306, 38 P. 2d 587; Little v. State, 55 Okla. Cr. 420, 32 P 2d 94; McDonald v. State, 54 Okla. Cr. 122, 15 P. 2d 149; City of Shawnee v. Landon, 3 Okla. Cr. 440, 106 P. 652.

And to ascertain the intention of the Legislature in the enactment of the statute, the court may look to each part of the statute, to other statutes upon the same subject, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Blevins v. W. A. Graham Co., 72 Okla. 308, 182 P. 247.

Another rule is that expressed in Art. V, § 57, of the Constitution of Oklahoma, reading:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

And also there is the rule that the construction placed on statutes or constitutional provisions by officers in discharge of their duties, either at or near the line of enactment, which has long been acquiesced in, is a just medium for its judicial interpretation. Ex parte Olden, 88 Okla. Cr. 56, 199 P. 2d 228; Foote v. Town of Watonga, 37 Okla. Cr. 43, 130 P. 2d 597; Leininger v. H. L. Cannady Co., 139 Okla. 301, 282 P. 474; Board of Com'rs of Tulsa Co. v. Mars, Sheriff, 189 Okla. 339, 117 P. 2d 129; Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okla. 35, 220 P. 2d 279, Id., 340 U. S. 179, 71 S. Ct. 215, 95 L. Ed. 190.

It is noteworthy from an examination of the statutory provisions that the public drunkenness statute, Tit. 37 O. S. 1951 § 8; p. 608 § 16, Art. 3 of Chap. 69 S. L. 1907-08, has never been amended by direct action of the Legislature since its enactment by the 1907-08 session. It is true that it was included in Chapter 69, Senate Bill No. 61, and the Act was entitled "Prohibition", as shown at page 594 of the above session laws, but at no place in the title is any reference or mention in any manner made to drunkenness.

Section 12, Tit. 37, supra, was passed in 1913, found at page 46 of 1913 Session Laws as an amendment to the prohibition act found in the 1910-11 S. L. at p. 154, under Chapter 70, entitled "Intoxicating Liquors—Prohibition Enforcement."

We have carefully examined the title to House Bill 46, amending sections 11 and 16 of chap. 70 S. L. 1910-11, and also the lengthy title to House Bill 18 of the 1910-11 Session Laws, and likewise we fail to find public drunkenness mentioned in said titles.

It is also of significance that in the beginning the prohibition ordinance of the Oklahoma Constitution, Art. I, § 7, as ratified on September 7, 1907, and which became effective on November 16, 1907, and is still to be regarded as the guide to the action following thereafter, that nowhere therein is any mention made of drunkenness, and there is nothing to in any way indicate that the framers of the Oklahoma Constitution intended for the law of public drunkenness to be a part of our prohibition ordinance. The failure to mention public drunkenness in the titles to the acts mentioned is violative of Art V, § 57 of the Okla. Const., heretofore quoted, if the same was intended to be a part of such law.

Adverting to section 15, heretofore quoted (and being an enactment of 1911 intoxicating liquor prohibition act) the Legislature in its enactment said that the words, "this act" wherever they may appear, in any of the laws of this state, enacted for the suppression of the liquor traffic, commonly called prohibition laws, that those words shall be construed to include all such prohibitory laws of the state, and the prosecution urges that by reason of such provision said section 15 makes section 12, the second offense statute, applicable to section 8, the public drunkenness statute.

We conclude that by reason of the provisions of Art. V, § 57 of the Constitution of Oklahoma, heretofore quoted, that section 15 of Title 37, supra, contained in the aforesaid provisions of our statute cannot be applied to the public drunkenness act of 1907-08 by reason of the public drunkenness statute not having been re-enacted and published at length as part of Chapter 70 of the 1910-11 Session Laws. See Board of Commissioners of Tulsa County v. Oklahoma Tax Commission, 202 Okla. 269, 212 P. 2d 462; Adams v. Fry, 204 Okla. 407, 230 P. 2d 915, and State v. Horner, 48 Okla. Cr. 141, 290 P. 197.

In the last mentioned case, this court said:

"The provision of article 5, § 57, that no law shall be amended by reference to its title only, but so much thereof as is amended shall be re-enacted and published at length, is mandatory."

It should be further noticed that this court in the recent case of Harrigill v. State, 90 Okla. Cr. 347, 214 P. 2d 263, at page 267, had occasion to consider what offenses were in violation of our prohibition ordinance, Art I, § 7 of the Oklahoma Constitution, and Brett, J., speaking for the court said:

"It is interesting to note the reason which gave rise to the amendment to Sec. 16, S. L. 1911, page 165, as amended, as the same now appears in Title 37, O. S. A. 1941 § 12. Section 16, S. L. 1911, Chapter 165, was enacted and approved on March 11, 1911. As it appeared therein it provided the minimum penalty for violations thereof should not be for less than a $500.00 fine, and by imprisonment for not less than 6 months. The minimum penalty therefore was in excess of that provided in the Constitution, Art. 1, § 7, providing a minimum penalty of a fine of not less than $50.00 and by imprisonment for not less than 30 days in all offenses involving the (1) manufacture, (2) sale, barter, give away, (3) or otherwise furnishing any intoxicating liquor of any kind, or the (4) advertising for sale of, soliciting the purchase of any liquors, or (5) who shall ship or convey such liquors. It should be remembered also that the foregoing provisions as they appear in the Constitution are almost identical with the provisions of the prohibition ordinance, O. S. A. 1941, page 115. It therefore appears that the provisions of Sec. 12, 37 O. S. A. 1941, before being amended, being applicable by way of enhancing the punishment for all the offenses enumerated in the constitutional provision providing a greater minimum penalty than provided in the Constitution was in conflict therewith and void. The situation in regard to the necessity that such acts, as the one under consideration, should contain the minimum penalty provision of the Constitution was first called to the attention of the legislature by the case of Nowakowsky [Nowakowski] v. State, 6 Okla. Cr. 123, 133, 116 P. 351. This was a case involving the statute approved March 9, page 164, S. L. 1909, prohibiting the sale of intoxicating liquor to any minor, or person of unsound mind, etc., and fixing the punishment for violation thereof at imprisonment in the penitentiary at not less than one year and no more than five years. Therein this court said: 'The prohibitory provision of the Oklahoma Constitution is self-executing, and declares that the unlawful sale of intoxicating liquor shall be punished by a fine of not less than $50 and imprisonment for not less than 30 days. An act of the Legislature approved March 9, 1909, Session Laws 1909, p. 164, provides that the punishment for selling intoxicating liquor to a minor shall be imprisonment in the penitentiary for a term of not less than one nor more than five years. Held, that the constitutional provision is all-embracing in its terms and includes a sale

to a minor; that the Legislature cannot remit the constitutional requirement that the offense shall be punished by a fine of not less than $50; that, while the Legislature may fix the maximum punishment for the offense, it cannot change the minimum punishment which the Constitution has fixed; and that the act is therefore unconstitutional and void.' "

In the case of State v. Smith, 83 Okla. Cr. 188, 174 P. 2d 932, 933, we said:

"The prohibition ordinance adopted by the people and made a part of our Constitution prohibits the manufacture, sale, barter, giving away, or otherwise furnishing, or the conveyance of intoxicating liquors from one place within this state to another place therein. In no part of this prohibition ordinance is it made unlawful to have the possession of intoxicating liquor."

Section 8 of Title 37 is not violated by a person who may get drunk in a hay-meadow off the public road and not at a public gathering. Mayes v. State, 80 Okla. Cr. 52, 156 P. 2d 822.

The Legislature evidently did not intend to classify persons who have been convicted more than once of drunkenness as felons because they have specifically stated otherwise. By Tit. 21 O. S. 1951, § 1141, it is provided:

"The following persons are vagrants within the meaning of this article: * * * Seventh: Any habitual drunkard. * * *"

And by section 1142 of the same Title, it is further provided:

"Any person arrested and convicted of vagrancy within the meaning of this Article, shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or by imprisonment in the county jail for a period of not exceeding thirty days, or by both such fine and imprisonment."

In State v. Smith, supra, this court held that if one is convicted of unlawful possession of intoxicating liquor, the court may not suspend the jail sentence but must either suspend the jail sentence and fine, or cause the defendant to be both incarcerated and to pay a fine. This by reason of the mandatory provisions of the Constitution and Prohibition Ordinance in punishment for the violation of the prohibitory liquor laws. Tit. 37 O. S. 1951, §§ 1 and 31, where the Legislature expressly declares that the punishment for violation of the prohibitory liquor laws must be both a fine and imprisonment.

In the recent case of Thorp v State, 96 Okla. Cr. 135, 250 P. 2d 66, a case involving second offense for driving while intoxicated where the first offense was committed in Texas, this court, per Brett, P. J., held that the second offense clause under the drunk driving statute was exclusive and barred resort to any general second offense statute.

Worthy of notice is the fact that there has been only one offense that is made a minor misdemeanor for the first conviction where the Legislature has seen fit to expressly create a felony upon a second conviction, and that offense is the misdemeanor of petit larceny. And in no other state of the Union do we find or have we been advised, that drunkenness, second offense, is made a felony.

A final and compelling matter to notice is that the second offense statute, section 12, has been enacted for a period of 39 years and no one prior hereto has attempted to apply it to anything but the possession, sale, manufacture, or trafficking in intoxicating liquor. Never has an imbiber (and there is no law against imbibing except as set out in section 8, supra) sought to be charged under sections 12 and 15, supra. The Oklahoma Tax Commission has never interpreted section 12 to apply to section 8; that is to say, prior to the repeal of § 162h of Tit. 37 O. S. 1941, in 1947, prior conviction for public drunkenness was not treated as a ground for refusal to issue a beer license, nor is it interpreted at

this time standing alone as an absolute ground for the cancellation of a beer license issued, unless it was in the place of business and caused disorderliness, etc. The repealed section prohibited county judges from issuing a permit to sell non-intoxicating beverages to any person who had been convicted of violating a law of this state, "prohibiting the traffic in any spirituous, vinous, fermented or malt liquors, or any of the laws commonly called 'Prohibition Laws,' " and said Commission held that said section did not prohibit a county judge from issuing a permit to a person who had been convicted of a violation such as defined in section 8 of Title 37 O. S. 1951; and now rules that drunkenness alone is not ground for forfeiting license issued.

Under date of May 10, 1944, Hon. Randell S. Cobb, Attorney General, by Fred Hansen, First Assistant, in an opinion to the County Attorney of Delaware County, treated the question here raised and concluded by stating:

"In this connection the Attorney General is of the further opinion that the provisions of said Section 12 are not applicable to convictions such as are referred to in 37 O. S. 1941 § 8, since the words 'this act', mentioned in Section 12, likewise mean, under the provisions of 37 O. S. 1941, § 15, 'laws of this State enacted for the suppression of the *liquor traffic*, commonly called prohibition laws. * * *"

The above opinion was adhered to by the present Attorney General in an opinion dated November 15, 1952, and directed to the warden of the Oklahoma State Penitentiary.

Applying the principles of law first referred to, to the facts as above developed, it is the conclusion of this court that the provisions of section 12, Title 37 O. S. 1951, are not applicable to convictions such as are referred to in Section 8 of said Title; and that section 15 of the Title does not apply to said section 8, but only to the suppression of the liquor traffic, commonly called Prohibition Laws, and could not apply to public drunkenness, even if the Legislature so intended, which does not in reason appear by fact of failure to comply with Art. V, § 57 of the Constitution of Oklahoma, in the respect as heretofore above detailed.

It might be well for us to ponder the thought "Who is a Criminal", or "Who are the Guilty?"[2] In 1950 a crime was committed every eighteen seconds. So these are important questions for every member of society. From our study, however, superficial as it has been, we do not discover that an habitual user of liquor is necessarily a criminal any more than the glutton for food, or the citizen who is intemperate in any activity of life is necessarily a criminal. Many good citizens are daily, even hourly, it would seem, succumbing to overwork and tension in causes most excellent and laudable. But they pay the terrible price by the violation of the laws of nature. The individual is the inevitable sufferer where he fails to practice moderation and restraint in answer to the temptations or the demands of appetite or of self or of clientele in the matter of his physcial and mental exertions.

As pointed out by Justice Holmes long ago in discussing the purpose of punishment in his famous treatise "The Common Law"; Lecture II, The Criminal Law, and see Williams v. New York, 337 U. S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337,

2 In 1944 with the support of The Josiah Macy, Jr., Foundation of the Psychiatric Institute in the Department of Psychiatry, Columbia University, Dr. David Abrahamson and staff commenced investigations and surveys among the emotionally maladjusted to find the answer. The references in the *Bibliography* would require months to read. As to who is responsible for the enormity of our crime rate, this authoritative book in the field of psychiatry places the blame on society, the home, the school, and the delinquent. Every citizen would do well to for himself determine his shortcomings in the social scheme of things by a study of this or some other comparable book on the subject. The book is published by Rinehart & Co., Inc., New York, under title, "Who are The Guilty."

# 262

punishment is no longer meted out to law violators, in Christian countries at least, for the sake of vengeance, but as a deterrent. Here without doubt the alcoholic directly does violence to no one except himself, unless he violates the terms of our section 8 of Title 37, supra. And he emphatically is a person in need of medical treatment, that under new discoveries has produced a high average of cures, and this service is made available to those desiring the treatment in hospitals throughout the country. Alcoholic Anonymous and most governmental medical agencies will advise the interested of the procedure necessary for taking advantage of this boon to the afflicted.

As we go about seeking to do good, might we not profit from a re-reading of the story familiar to all Christians of "A certain man [who] went down from Jerusalem to Jericho and fell among thieves"? (Luke 10:29-37) and particularly interesting is the commentary thereon by Fulton Oursler in "The Greatest Story Ever Told". It could be of aid to every citizen in determining true values in life and assist each of us in more readily recognizing our obligations and duties to others.

By force of all the foregoing we conclude that it was never the intention of the Legislature to make habitual drunkenness a felony and the conviction of the petitioner in the superior court of Okmulgee county, sitting at Henryetta, is hereby set aside and the judgment and sentence entered is found to be null and void, and said David S. Barnett is hereby ordered released from the sentence and judgment imposed.

BRETT, P. J., and JONES, J., concur.